UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**KERRY JO SWOSINSKI,**

    **Plaintiff,**

    v.                                                                                                           Case No. 19-CV-962-SCD

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

---

## DECISION AND ORDER

---

In 2014, Kerry Jo Swosinski applied for Social Security benefits, alleging that he is unable to work due to chronic pain in his neck, back, shoulder, right hand, and left elbow. Following a hearing, an administrative law judge (ALJ) determined that Swosinski remained capable of working notwithstanding his impairments. Swosinski now seeks judicial review of that decision.

Swosinski argues that the ALJ improperly weighed the medical opinion evidence and erroneously discounted his alleged symptoms. The Commissioner contends that the ALJ did not commit an error of law in reaching his decision and that the decision is otherwise supported by substantial evidence. I agree with the Commissioner. Accordingly, his decision will be affirmed.

## BACKGROUND

Swosinski was born on July 11, 1971, in Milwaukee, Wisconsin. R. 256.[1] He dropped out of high school after his sophomore year and later obtained his GED. R. 53, 279. After

---

[1] The transcript is filed on the docket at ECF No. 11-2 to ECF No. 11-19.

leaving high school, Swosinski worked in various unskilled jobs. R. 45–46. In 2005, he started working as a general laborer making stone molds. R. 46–47. The job involved standing or walking for half the workday and lifting less than ten pounds. R. 284–85. Swosinski was laid off in November 2009, and he hasn't worked since. *See* R. 48–49.

In 2011, Swosinski applied for disability insurances benefits and supplemental security income from the Social Security Administration (SSA). R. 96. An ALJ denied his claim on December 16, 2013. R. 108. Swosinski reapplied for benefits in February 2014, alleging that he became disabled on December 17, 2013, the day after the ALJ's unfavorable decision. R. 248–60. Swosinski asserted that he was unable to work due to degenerative discs in his back and neck, two bulging discs in his neck, and arthritis. R. 249. After the SSA denied his applications initially, R. 104–23, and upon reconsideration, R. 124–43, Swosinski appeared before ALJ Peter Kafkas for an administrative hearing on October 26, 2016, R. 76–103. He was represented by an attorney. R. 78. At the time of the hearing, Swosinski was forty-five years old. R. 21. He was living in a house with his wife and eleven-year-old daughter. R. 84–85, 88.

Swosinski testified that he was unable to work due to bad discs in his back, knee issues, a torn right rotator cuff, carpal tunnel in both hands, and a bulging disc in his neck. R. 87. Together these issues resulted in chronic pain throughout his entire body that never went away, despite lying down and using a TENS unit and ice packs throughout the day. R. 87–88. Swosinski testified that injections helped subside some (though not all) of his pain, but that any relief lasted only one or two weeks. R. 91–92. Swosinski estimated that he could stand for one or two hours at a time and about three hours total in a workday. R. 89–90. He wore a

neck brace during the hearing, R. 90–91, and claimed to use a cane on an as-needed basis, R. 85.

The ALJ also heard testimony from Eric Dennison, a vocational expert (VE). According to Dennison, Swosinski's mold maker job was an unskilled position performed at the light level. R. 94–95. Dennison testified that a hypothetical person with Swosinski's age, education, and work experience could not perform that job if he were restricted to sedentary work with additional nonexertional limitations. R. 93–95. However, that person could perform other jobs, including, for example: information clerk and telephone solicitor. R. 95–100. Dennison testified that no jobs would be available if the hypothetical person was limited to unskilled work. R. 100–01.

On April 4, 2017, the ALJ issued a decision applying the five-step evaluation process. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). He found that Swosinski was not disabled because, despite his impairments, there were a significant number of jobs that he could still perform. *See* R. 14–35. Swosinski requested review of the ALJ's decision by the SSA's Appeals Council. R. 246–47. On January 18, 2018, the Appeals Council denied Swosinski's request for review, R. 1–6, making the ALJ's decision the final decision of the Commissioner of Social Security, *see Loveless v. Colvin*, 810 F.3d 502, 506 (7th Cir. 2016). Thereafter, Swosinski sought judicial review of the Commissioner's decision under 42 U.S.C. § 405(g). R. 653–60. Pursuant to a stipulation, the District Court remanded the matter to the Commissioner for further proceedings. *See* R. 660–71.

On remand, the Appeals Council vacated the ALJ's April 2017 decision and sent the matter back to the ALJ for further consideration of the step-five finding. R. 672–76. Swosinski appeared before the ALJ for another hearing on April 1, 2019. *See* R. 616–50. According to

his attorney, Swosinski was unable to work due to chronic pain in his neck, back, shoulder, right hand, and left elbow; a mood disorder; and asthma. R. 622–23. Swosinski testified that he was unable to lift more than ten pounds; sit for longer than twenty minutes before needing to change positions; and stand or walk for longer than twenty minutes before needing to sit. R. 631–32. He reported frequently wearing a brace on his right knee and occasionally using a cane. R. 632–35. Swosinski further reported that he didn't drive very frequently due to side effects from his medications. R. 635–36. The ALJ also heard testimony from another VE, Catherine A. Anderson. *See* R. 636–48. Anderson testified that a hypothetical person with Swosinski's age, education, and work experience could work as a surveillance system monitor, an order clerk, and an office clerk if he were restricted to sedentary work with additional limitations. R. 638–44.

On May 1, 2019, the ALJ issued another unfavorable decision. R. 595–615. The ALJ determined that Swosinski had not engaged in substantial gainful activity since his alleged onset date (December 17, 2013); Swosinski suffered from three "severe" impairments: degenerative disc disease of cervical and lumbar spine, osteoarthritis and arthralgias of the hips and knees bilaterally, and degenerative joint disease of the right shoulder; Swosinski did not suffer from an impairment or combination of impairments that met or medically equaled the severity of a presumptively disabling impairment; Swosinski had the residual functional capacity (RFC) to perform a restricted range of sedentary work; Swosinski was unable to perform any past relevant work; and other jobs existed in significant numbers in the national economy that Swosinski could perform. R. 598–608. Based on those findings, the ALJ concluded that Swosinski was not disabled. R. 608–09. Swosinski did not file written exceptions to the ALJ's May 2019 decision, and the Appeals Council did not assume

4

jurisdiction of the case; thus, the ALJ's decision became the final decision of the Commissioner after remand. *See* 20 C.F.R. §§ 404.984(d), 416.1484(d).

Swosinski filed this action on July 3, 2019, seeking judicial review of the Commissioner's May 2019 decision. ECF No. 1. The matter was assigned to this court in April 2020. All parties have consented to magistrate-judge jurisdiction. *See* ECF Nos. 20, 21 (citing 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b)). The matter is now fully briefed and ready for disposition. *See* ECF Nos. 13, 18, 19.

## APPLICABLE LEGAL STANDARDS

"Judicial review of Administration decisions under the Social Security Act is governed by 42 U.S.C. § 405(g)." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (citing *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010)). Pursuant to sentence four of § 405(g), federal courts have the power to affirm, reverse, or modify the Commissioner's decision, with or without remanding the matter for a rehearing.

Section 205(g) of the Act limits the scope of judicial review of the Commissioner's final decision. *See* § 405(g). As such, the Commissioner's findings of fact shall be conclusive if they are supported by "substantial evidence." *See* § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (other citations omitted). The ALJ's decision must be affirmed if it is supported by substantial evidence, "even if an alternative position is also supported by substantial evidence." *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004) (citing *Arkansas v. Oklahoma*, 503 U.S. 91, 113 (1992)).

Conversely, the ALJ's decision must be reversed "[i]f the evidence does not support the conclusion," *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (citing *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003)), and reviewing courts must remand "[a] decision that lacks adequate discussion of the issues," *Moore*, 743 F.3d at 1121 (citations omitted). Reversal also is warranted "if the ALJ committed an error of law or if the ALJ based the decision on serious factual mistakes or omissions," regardless of whether the decision is otherwise supported by substantial evidence. *Beardsley*, 758 F.3d at 837 (citations omitted). An ALJ commits an error of law if his decision "fails to comply with the Commissioner's regulations and rulings." *Brown v. Barnhart*, 298 F. Supp. 2d 773, 779 (E.D. Wis. 2004) (citing *Prince v. Sullivan*, 933 F.2d 598, 602 (7th Cir. 1991)). Reversal is not required, however, if the error is harmless. *See, e.g.*, *Farrell v. Astrue*, 692 F.3d 767, 773 (7th Cir. 2012); *see also Keys v. Barnhart*, 347 F.3d 990, 994–95 (7th Cir. 2003) (citations omitted).

In reviewing the record, this court "may not re-weigh the evidence or substitute its judgment for that of the ALJ." *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). Rather, reviewing courts must determine whether the ALJ built an "accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley*, 758 F.3d at 837 (citing *Blakes*, 331 F.3d at 569; *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001)). Judicial review is limited to the rationales offered by the ALJ. *See Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Johnson v. Apfel*, 189 F.3d 561, 564 (7th Cir. 1999); *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).

**ANALYSIS**

Swosinski contends that the ALJ's RFC assessment is not supported by substantial evidence because the ALJ erred in evaluating (1) Swosinski's upper-extremity limitations and (2) the intensity, persistence, and limiting effects of Swosinski's alleged symptoms.

**I.      Upper-extremity limitations**

Swosinski argues that the ALJ did not adequately develop the medical opinion evidence when assessing potential upper-extremity limitations. *See* ECF No. 13 at 11–15. He first takes issue with the weight given to the opinions of his primary care physician, Robert Bodensteiner, M.D. Swosinski has been treated by Dr. Bodensteiner on an as-needed basis since December 2013. R. 511. On August 15, 2014, Swosinski visited Dr. Bodensteiner so he could fill out a functional capacity disability form. R. 586–87. Dr. Bodensteiner indicated on the questionnaire (among other things) that Swosinski could occasionally lift ten pounds; never lift twenty pounds; never use his hands for grasping, turning, or twisting objects; never use his fingers for fine manipulation; and never use his arms for reaching. R. 512. Dr. Bodensteiner also indicated that Swosinski "should not drive or operate machinery" because "[p]ain medication may cause drowsiness." R. 511.

When assessing Swosinski's RFC, the ALJ gave little weight to the opinions contained in the RFC questionnaire. R. 606. The ALJ explained that Dr. Bodensteiner's "extreme limitations were inconsistent with the mild to moderate objective findings from [Swosinski's] treatment records"; that the record did not reflect any significant side effects from pain medication; that the majority of Dr. Bodensteiner's opined limitations appeared to be based on Swosinski's self-reports, not objective findings; and that the majority of Swosinski's treatment during the relevant time period was performed by other providers. R. 606–07.

7

Swosinski maintains that the ALJ erred in evaluating the RFC questionnaire. According to Swosinski, Dr. Bodensteiner's observations during the August 15, 2014 visit were consistent with the record, which showed that Swosinski suffered from issues in his spinal column, shoulder, and elbow. ECF No. 13 at 13–14. Swosinski therefore asserts that the ALJ should have afforded more weight to Dr. Bodensteiner's opinions and limited him to "minimal manipulative activity." *Id.* at 15.

The ALJ did not err in evaluating the opinions contained in the RFC questionnaire. Swosinski challenges only one of the four reasons the ALJ gave for discounting those opinions—lack of consistency with the objective findings. As an example of this inconsistency, the ALJ explained that "Dr. Bodensteiner noted [Swosinski] was unable to perform any work with his hands because of carpal tunnel syndrome and arthritis. However, EMGs performed on [Swosinski's] hands did not reveal electrodiagnostic evidence of carpal tunnel syndrome and diagnostic imaging revealed only mild degenerative changes in [Swosinski's] hands." R. 606–07. Swosinski appears to argue that this diagnostic evidence did not constitute a good reason to reject Dr. Bodensteiner's opinions because Dr. Bodensteiner's opined limitations transcended his reference to carpal tunnel syndrome. That may be true. But the ALJ did not determine that *all* of Dr. Bodensteiner's opined limitations were inconsistent with diagnostic imaging evidence. Rather, his reference to the diagnostic evidence was limited to Dr. Bodensteiner's opined limitations concerning Swosinski's *use of his hands*. *See* R. 606.

Moreover, the ALJ reasonably concluded that Dr. Bodensteiner attributed Swosinski's alleged inability to work with his hands and fingers primarily to carpal tunnel syndrome. Dr. Bodensteiner's August 15, 2014 treatment notes indicate: "He has cervical spinal stenosis,

8

cervical spondylosis without myelopathy, but he does get numbness and tingling in his upper arms. He also has an element of carpal tunnel. He drops things. He is unable to do fine motor." R. 587. It is reasonable to infer from these notes that Dr. Bodensteiner attributed Swosinski's upper-arm (i.e., reaching) limitations to his cervical impairments and his handling and fingering issues to carpal tunnel. And substantial evidence supports the ALJ's finding that the diagnostic evidence did not support a diagnosis of carpal tunnel syndrome or a severe limitation concerning Swosinski's use of his hands and fingers. *See* R. 605 (citing Ex. B4F/96; B4F/32; B4F/92, 93).

Because Dr. Bodensteiner's opined handling and fingering limitations were inconsistent with the objective medical evidence, the ALJ reasonably did not include them in the RFC assessment. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (explaining that a treating source's opinion is entitled to controlling weight only if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record"). Moreover, Swosinski has not provided any basis to question the ALJ's evaluation of Dr. Bodensteiner's other opined limitations. I therefore find no error in how the ALJ weighed the opinions contained in the RFC questionnaire.

Swosinski also attacks the ALJ's RFC assessment more generally. With respect to upper-extremity limitations, the ALJ determined that Swosinski "can reach on a frequent basis[] but must never be required to reach overhead." R. 602. The ALJ arrived at this limitation in part based on the opinions of state agency medical consultants Pat Chan, M.D., and Mina Khorshidi, M.D., who opined in June 2014 and January 2015, respectively, that Swosinski was capable of the full range of sedentary work (i.e., without further upper-extremity limitations). *See* R. 606 (citing Ex. 3A; 4A; 7A; 8A).

9

Swosinski does not take issue with any of the reasons the ALJ provided for giving those opinions great weight. Rather, he maintains that the ALJ failed to articulate a basis for his specific reaching limitation. *See* ECF No. 13 at 15. He accuses the ALJ of impermissibly "us[ing] the non-examining consultant's opinions as a baseline and add[ing] limitations due to raw data analysis or a benefit of the doubt"—in other words, the ALJ "split the difference" between the opinions of the state agency consultants and the opinions of Dr. Bodensteiner. *See id.*

The ALJ's reaching limitation is supported by substantial evidence. The ALJ explained that this limitation was based on Swosinski's subjective complaints of neck and shoulder pain. *See* R. 605 ("The claimant's neck and shoulder pain are further accommodated by a limitation to work that required him to reach on only a frequent basis and never requires him to reach overhead."), 606 ("Accordingly, the opinions of Drs. Chan and Khorshidi are reflected in the residual functional capacity finding herein. However, the undersigned included some additional . . . manipulative . . . limitations based on the claimant's testimony in both October 2016 and April 2019."). The ALJ further explained why the objective medical evidence did not support a more severe limitation. *See* R. 605. Put simply, both explanations have adequate support in the record.

In sum, Swosinski has failed to demonstrate that the ALJ erred in assessing his potential upper-extremity limitations.

## II. Symptom evaluation

ALJs use a two-step process for evaluating a claimant's symptoms. Social Security Ruling (SSR) 16-3p, 2016 LEXIS 4, at *3 (Mar. 16, 2016). First, the ALJ must "determine whether the individual has a medically determinable impairment (MDI) that could reasonably

10

Case 2:19-cv-00962-SCD   Filed 05/11/20   Page 10 of 14   Document 22

be expected to produce the individual's alleged symptoms." *Id.* at *5. Second, the ALJ must "evaluate the intensity and persistence of an individual's symptoms such as pain and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities." *Id.* at *9.

Reviewing courts "will overturn an ALJ's decision to discredit a claimant's alleged symptoms only if the decision is 'patently wrong,' meaning it lacks explanation or support." *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017) (quoting *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014)). "A credibility determination lacks support when it relies on inferences that are not logically based on specific findings and evidence." *Id.* "In drawing its conclusions, the ALJ must 'explain her decision in such a way that allows [a reviewing court] to determine whether she reached her decision in a rational manner, logically based on her specific findings and the evidence in the record." *Murphy*, 759 F.3d at 816 (quoting *McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011)).

The ALJ here concluded that Swosinski's medically determinable impairments could reasonably be expected to cause his alleged symptoms but found that Swosinski's statements concerning the intensity, persistence, and limiting effects of those symptoms were "not entirely consistent with the medical evidence and other evidence in the record." R. 604. The ALJ provided four reasons to support this finding (1) "[Swosinski's] medical records reflect that despite his physical impairments, he has retained reasonable physical function"; (2) "pain management notes generally document improvement with treatment"; (3) "while the claimant has reported drowsiness as a side effect of medication, treatment notes fail to document complaints and his treating provider has noted at times that the claimant does not report side

effects and did not display somnolence"; and (4) "the claimant's treatment notes . . . fail to substantiate his use of or need for a cane when walking." *See* R. 604–05.

Swosinski argues that the ALJ did not sufficiently justify his discounting of Swosinski's subjective complaints. *See* ECF No. 13 at 15–17. He contends that the record reveals both negative testing and positive findings and that his treating providers did not seem to believe that the negative findings contradicted his subjective reports. He further contends that he remained in significant pain despite treatment and that any improvement with treatment was only temporary.

The ALJ did not err in rejecting Swosinski's complaints of disabling symptoms. First, substantial evidence supports the ALJ's finding that, despite his physical impairments, Swosinski consistently displayed adequate functioning on examination, including: no signs of distress; no gait abnormalities; intact coordination and balance; good mobility; ability to walk on heels and toes; ability to rise readily from a squatted position; generally good upper-extremity power; relatively good range of motion of the cervical spine; and normal sensation, strength, and reflexes. *See, e.g.*, R. 604 (citing Ex. B3F/29; B4F/19; B3F; B6F; B7F/2, 17, 21, 28, 30, 38, 41, 50; B11F; B7F/12). The ALJ was not compelled to fully believe Swosinski's alleged symptoms just because a few of her treatment providers did not explicitly say that the objective evidence contradicted them. And the ALJ provided good reasons for not crediting the opinions of Dr. Bodensteiner, the only provider who corroborated Swosinski's subjective complaints. The ALJ did not, as Swosinski suggests, reject his complaints solely because they were not substantiated by the objective medical evidence.

Second, substantial evidence supports the ALJ's finding that Swosinski generally improved with treatment. The ALJ reasonably noted that, although at times Swosinski

12

reported limited benefit with certain treatment options, during the relevant period he often reported good improvement or improved daily activities from taking medication. *See, e.g.*, R. 604–05 (citing B3F/32, 35, 39; B6F; B7F; B3F/41; B11F; B13F). Swosinski cites two examples that purportedly contradict the ALJ's finding of improvement with treatment: (1) a March 2015 Oswestry Score[2] that reflected severe functional impairment and (2) pain management visits from July and September 2017 where he reported that relief from an epidural steroid injection lasted only three weeks at fifty percent. *See* ECF No. 13 at 17 (citing R. 565–66, 811, 817). But again, the ALJ acknowledged that Swosinski did not *always* demonstrate improvement. Swosinski essentially asks me to reweigh this evidence, which, of course, the law precludes me from doing. *See Skarbek*, 390 F.3d at 503 (citation omitted).

Finally, substantial evidence supports the ALJ's finding that the record did not corroborate Swosinski's complaints of medication side effects or his need to use a cane. *See* R. 605 (citing B3F; B6F; B7F). Although Swosinski questioned these reasons in his reply brief, *see* ECF No. 19 at 2, his initial brief did not mention them, *see* ECF No. 13 at 15–17. He has therefore waived this argument. *See Estate of Phillips v. City of Milwaukee*, 123 F.3d 586, 597 (7th Cir. 1997) (quoting *Wildlife Express Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 508 n.5 (7th Cir. 1994)) ("[A]rguments raised for the first time in the reply brief are waived.").

Accordingly, Swosinski has failed to demonstrate that the ALJ's decision to discredit his alleged symptoms lacks explanation or support in the record. I therefore find no error in the ALJ's decision to not fully credit Swosinski's complaints of disabling symptoms.

---

[2] "[A]n Oswestry score is not a medical opinion. It is instead a calculation based on the patient's answers to a series of questions in which she is asked to rate her own pain and functioning." *Akin v. Berryhill*, Case No. 15-C-1380, 2017 U.S. Dist. LEXIS 26149, at *24 (E.D. Wis. Feb. 23, 2017).

## CONCLUSION

For all the foregoing reasons, I find that the ALJ did not commit reversible error in concluding that Swosinski was not disabled as of December 17, 2013. Thus, the Commissioner's decision is **AFFIRMED**. The Clerk of Court shall enter judgment accordingly.

**SO ORDERED** this <u>11th</u> day of May, 2020.

_____
STEPHEN C. DRIES
United States Magistrate Judge